DULANY (SHREVE v.). See Case No. 12,817.

DULANY (U. S. v.). See Cases Nos. 14,999 and 15,000.

DULANY (VIRGINIA v.). See Case No. 16,959.

DULUTH (U. S. v.). See Case No. 15,001.

---

## Case No. 4,124.

### In re DUMAHAUT et al.

[15 Blatchf. 20.] [1]

**Circuit Court, S. D. New York. July 1, 1878.**

BANKRUPTCY—COMPOSITION PROCEEDINGS — PRESENCE OF DEBTOR — PREVIOUS VOLUNTARY ASSIGNMENT—ACCOUNTING BY ASSIGNEE.

1. Under section 17 of the act of June 22, 1874 (18 Stat. 182), in relation to compositions in bankruptcy, the debtor is not required to be present at a meeting of creditors called to consider a resolution to vary a composition which has been accepted.

2. Where, at such a meeting, a creditor insisted on the presence of the debtor, but the register decided otherwise, and it did not appear that information was required from the-

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

debtor, nor that the creditor might have been injuriously affected by his absence, it was *held* that the absence of the debtor was no ground for refusing to confirm the proceedings.

3. Where the terms of a composition, as originally adopted, ratified a voluntary assignment previously made by the debtor under the state law, it was *held* that the creditors could, by a resolution duly passed, under the statute, at a subsequent meeting, vary such terms, by providing that such voluntary assignment should not be carried out, but that the assets should be distributed in bankruptcy, it appearing that no injury could arise to any creditor from the amendment.

4. After the confirmation of the original resolution of composition, a creditor had brought a suit in a state court, to compel the voluntary assignee to account. The district court, in the order confirming the resolution of variation, provided for the reimbursement to such creditor of his reasonable expenses incurred in such suit: *Held*, that such creditor had no right in the assigned property, which would be prejudiced by such order.

[Petition for review of an order of the district court of the United States for the southern district of New York in the matter of Edward G. Dumahaut and George Spicer.]

Wilson M. Powell, for Bull's Head Bank.
William B. Hornblower, opposed.

WAITE, Circuit Justice. On the 4th of December, 1875, the bankrupts, as partners doing business under the name of E. G. Dumahaut & Co., assigned to one Clement all their partnership property, for the equal benefit of all their creditors. The assignee accepted his trust, and entered upon the performance of his duties, in accordance with the state laws regulating the administration of such trusts. Upon the petition of certain creditors, filed on January 12th, 1876, in the district court, the two partners were adjudicated bankrupts, on September 14th, 1876. On the 18th of October following, a meeting of the creditors was held, to consider a proposition of the bankrupts for a composition. The terms proposed were twenty-five cents on the dollar, in money, payable in one, two, and three years from the date of the order confirming the composition, to be evidenced by the promissory notes of the bankrupts, for like times and amounts, the said composition to be secured and carried into effect as follows: "An adjudication in bankruptcy to be had, and an assignee chosen, the said assignee, however, to make no claim upon Percival W. Clement, the assignee under a voluntary assignment from the firm of E. G. Dumahaut & Co., for the assets in his hands, as such assignee, but the same to be administered and distributed by him, as such assignee, in all respects as if no proceedings in bankruptcy had been had, and any dividend paid by the said Percival Clement, from the said estate, over and above twenty per cent. on the dollar, to be credited upon the composition notes then next maturing." &c., &c. Pending this proposition for composition, and before any final action thereon, to wit, on February 27th, 1877, the Bull's

Head Bank, one of the creditors, commenced an action in the supreme court of the state, in its own behalf, and on behalf of all other creditors, against the voluntary assignee, for an accounting under his trust. On March 19th, 1877, a receiver of the assigned property was appointed in such action, but he has never reduced any of the property to his possession. On the 5th of April, a second meeting of the creditors was held, to consider the composition, and on the 12th of May the composition was confirmed by the district court, sitting in bankruptcy. On the 19th of July, the action in the state court was referred to a referee, to hear and determine the same, but, on the same day, the district court, sitting in bankruptcy, on petition of the bankrupts, enjoined the bank from further proceedings in the action. On the 13th of October, this injunction was so far modified as to permit the bank to proceed, and, on the 27th of the same month, the referee directed that the assignee account in that action. The assignee thereupon presented his account, which has been passed, and an order of the court has been made, requiring the creditors to come in and prove their claims. Pursuant to a further order of the court in bankruptcy, made November 15th, 1877, a meeting of the creditors was held to consider the following proposed amendment to the composition: "That the composition heretofore accepted by the creditors herein, and confirmed by the court, by an order entered on the 12th day of May, 1877, be amended so as to provide that the assignee in bankruptcy herein shall make demand upon Percival W. Clement, for the assets in the hands of said Clement, as assignee for the benefit of the creditors of E. G. Dumahaut & Co.; and that the assignee in bankruptcy shall distribute the said assets in accordance with the bankrupt laws of the United States; and that any dividend out of such assets, over and above twenty cents on the dollar, shall be credited on the composition notes then next maturing; and that the said composition, in all other respects, remain unaltered, and in full force and effect." The bankrupts were not present at this meeting. The resolution for the amendment was offered by a creditor. The Bull's Head Bank was present and filed objections to the proceeding. The bank also insisted that the bankrupts should be present, but the register decided otherwise. The meeting voted in favor of the adoption of the amendment. On the 5th of February, the bankrupt court ordered a further meeting, to be held on the 15th, to further consider the matter. At this meeting the bank appeared, and still insisted upon its original protest, and filed other objections. The amendment was again approved by the creditors, and, on the 11th of March, confirmed by the court, upon the condition precedent to the taking effect thereof, that the bankrupts and the creditors who had signed the

resolution of amendment pay to the Bull's Head Bank such sums towards the reimbursement of its expenses in and about the action in the state court, as the bankrupt court should award.

The Bull's Head Bank now asks this court, under its supervisory jurisdiction, to set aside the order of confirmation thus entered. The objections relied upon, on the argument, are: (1) The absence of the bankrupts from the meeting; (2) The voluntary assignment having been ratified by the terms of the composition as originally adopted, cannot now be attacked by the creditors bound by the composition proceedings, or by the assignee in bankruptcy; (3) The bank acquired a vested interest in the general assignment by the operation of the original composition, of which it cannot be deprived without its consent. No one appears to object to the amendment, except the bank. The bankrupts are satisfied, and so are all the other creditors.

The amendment to the bankrupt act, which authorizes and regulates proceedings for composition,—Act June 22, 1874, § 17 (18 Stat. 182),—expressly provides, that "the creditors may, by resolution passed in the manner and under the circumstances aforesaid, add to, or vary the provisions of, any composition previously accepted by them, without prejudice to any persons taking interests under such provisions, who do not assent to such addition or variation. And any such additional resolution shall be presented to the court in the same manner, and proceeded with in the same way, and with the same consequences, as the resolution by which the composition was accepted in the first instance."

There is nothing which, in terms, requires the debtor to be present at a meeting of creditors called to consider a resolution to vary a composition which has been accepted. His presence at the meeting to consider his own proposition is required, in order that inquiry may be made of him as to the true condition of his affairs, and information obtained from him by the creditors, to enable them to act understandingly upon the matter in hand. The law does not make it his duty to attend any other meetings, though, if summoned to appear, he should attend. The creditors may excuse his attendance at the first meeting, and, if they do, the court will not refuse to ratify the resolution on that account, unless it appears that his presence was important for the due consideration of the proposition. There is no doubt but a creditor may ask that the debtor be summoned to appear at any meeting called in the subsequent proceedings. If, however, from any cause, this request is not complied with the court will not refuse to approve what is done, unless it appears, with reasonable certainty, that information was required from him in respect to the subject-matter under consideration at the time, and that the complaining creditor might have been injuriously affected by his absence. Such a condition of affairs does not appear in this case. The resolution of amendment was proposed by a creditor and not the debtor. It had reference entirely to the manner in which the composition should be carried into effect. The avails of the property assigned had already been secured to the creditors, and the only question to be considered was as to the best mode of realizing the money. It is unnecessary to inquire whether the creditors could take the property out of the hands of the voluntary assignee without the consent of the debtor, for he does not object. Even the complaining creditor was satisfied to remove the assignee, for, in his suit, he had obtained an order that the property in the hands of the assignee be delivered to his receiver. I think, therefore, this objection is not well taken.

The other two may be considered together. The validity of the assignment is not attacked in these proceedings. The effect of what has been done is not materially different from that which has been attempted by the bank. Both parties want the property taken out of the hands of the voluntary assignee. The difference is, that the bank wants the trust administered by the receiver appointed by the state court, while the other creditors desire to have it administered by the assignee in bankruptcy. If the facts stated in the petition for review filed by the bank are true, the same creditors will be entitled to the dividends, no matter who executed the trust. As the assignment was for the equal benefit of all partnership creditors, and the bankrupt law [of 1867 (14 Stat. 517)] will distribute the property in the same way, no injury can arise from the provision in the resolution of amendment, directing the assignee in bankruptcy to make his distribution in accordance with the bankrupt law. The property is still in the hands of the voluntary assignee. The question is, who shall take it from him, the receiver in the state court or the assignee in bankruptcy. A majority of those in interest prefer it should go to the assignee in bankruptcy, and there is nothing in the law to prevent it, unless the bank, which is the only complaining creditor, will be prejudiced in respect to some interest acquired under the original composition, as accepted. All the right it acquired under the composition was to receive its dividend, upon the distribution of the proceeds of the assigned property. That right has not been taken away by the amendment.

Pending the original proposition, and before its acceptance, the bank commenced its suit in the state court to bring the voluntary assignee to an account. That it had the right to do, under the terms of composition originally proposed. That proceeding has resulted in an adjustment of the accounts and a settlement of the amount due. Provision is made in the order now under review for a reimbursement of the reasonable expenses incurred in that suit. The amount is to be as-

certained, and, no doubt, ample justice will be done in the premises. I see, therefore, no right which the bank has in the property that will be prejudiced by the order as it stands.

The order of the district court is affirmed.

[NOTE. For other proceedings arising out of the assignment in the state court, see Cases Nos. 4,125 and 4,126.]